Next case that we have this morning, which is Hard Candy v. Anastasia Beverly Hills, Inc. Good morning. Good morning, Your Honor. I'm John Margiotta from Frost Cell and the Glamor and Zissou representing the appellant Hard Candy here with my co-counsel Emily Weiss. First of all, thank you very much for granting us oral argument in this case. I understand the Eleventh Circuit is very judicious with it. We believe that this case presents very important issues on the policy side and that there are imperatives here to reverse the district court's finding, both on the policy issue of access to a jury trial for plaintiffs and trademark cases and also if this case is allowed to court, we think it's going to potentially open floodgates for trademark infringements. As you know from reading the record, this case involves our client, Hard Candy's well-known brand in the cosmetics field. They've been around for decades, five years prior to the trial they'd done $200 million in business under it and the competitor, Anastasia, the defendant here, used our client's Hard Candy mark, the identical mark, on a competing product, a cosmetic product. The district court found on summary judgment that our mark was strong, that it was used in the same exact trade channels on very similar or identical products and yet the district court found that confusion was unlikely. So, because of really the exceptional nature of it, we do think that there are serious policy implications. Let's start with the Seventh Amendment claim. Yes, the right to the jury trial. So what happened below, Your Honor, is that Anastasia moved for summary judgment on the issue of damages. Our client stipulated to waiving its claim under the Lanham Act for damages. The defendant then moved to strike the jury and the district court agreed striking the jury. We would urge the Eleventh Circuit to overturn that and to adopt an approach that has been adopted by several district courts that we have cited to in our papers. What is it that you were doing when you entered into that stipulation? When I looked at the complaint to begin with and the prayer for relief, it looks to me like you sought everything the Lanham Act provides. You sought actual damages. You sought an accounting. You sought a disgorgement. You sought injunctive relief and you sought fees and costs. That's everything the Lanham Act could possibly give you. Correct. You said you were entitled to all of that, specifically with respect to the equitable things you sought. You certainly sought injunctive relief and you sought an accounting. Correct. Then you enter into a stipulation during the course of the summary judgment debate where you say, and I quote, plaintiff Hard Candy stipulates it is not seeking actual damages or lost profits. Instead, plaintiff seeks to recover defendant Anastasia's profits from its sales of a cosmetic product. What did you mean when you said you weren't seeking actual damages or lost profits? What were you giving up? Under the Lanham Act, you can pursue actual damages. I understand what the Lanham Act says. What did you specifically believe you were giving up by doing that? We were giving up pursuing actual damages to our client. Actual damages might be measured in this Lanham Act way in the form of, say, lost sales by you, lost profits by you, perhaps harm to your market reputation, something like that. Correct, Your Honor. You were giving all of that up? We were giving up only the individual claim. Of the specific things that I'm asking about. Yes. You were giving up any claim that you had lost profits, lost sales, diminished sales, market reputation harm, the fact that you had to drop your price because of what they did. You gave all of that up, didn't you? No, I don't think so, Your Honor. What we gave up was a very specific claim under the Lanham Act for actual damages or … But wouldn't actual damages under the Lanham Act include, among other things, loss from on account of the actor's misconduct? That would be included, wouldn't it? That could be included, but what's unique about the Lanham Act, Your Honor, is that it allows more than one way for a plaintiff to prove it. So you can prove it by getting an expert who says you lost sales or you lost license fees, but it is recognized in the Lanham Act and by case law that's been developed around this, it is extremely difficult in a trademark context. There is no question that you have the remedy of seeking disgorgement, seeking and accounting. Correct. All I'm asking about is whether that is different in kind, even if it serves as a proxy for actual damages, whether it is different in kind from actual damages which you stipulated away. I believe so. It is different in kind because it is a different remedy under the Lanham Act, and I do not believe that counsel at the district court level was surrendering that right. In the record, it's very clear because they then moved for a jury trial, to strike the jury demand, I'm sorry, and at the hearing, I'll read you the quote. There's no question you said we want a jury trial regardless of what we were stipulating away. Yes. But then... But that doesn't answer the question. That's... I'm sorry. That doesn't answer the question of whether an accounting and a disgorgement amounts to an equitable form of remedy or a legal form. And I... And I don't know that it's enough to just say, well, it's easier to prove the one than the other, therefore, we gave up the other and we're still entitled to a jury. I don't... I don't think that that's the way that these cases read, Your Honor. There is a special exemption because of the difficulty in the Lanham Act, so when you elect as a proxy theory to pursue the disgorgement of profits as a proxy for damages, there are several courts around the United States that we've cited to that then read that as a legal claim, not an equitable remedy. And the First Circuit has even said that that is absolutely the best way to read it, particularly in the context of what the end result is, right? If the... If plaintiffs in trademark cases, and that's why this is important for policy implications, if plaintiffs are to take advantage of this remedy, the special remedy that's granted by the Lanham Act, to ease the burden on the innocent party that has been infringed. So what do you understand an accounting to be? An accounting of profits? It can be more... You're asking for an accounting from the defendant. Correct. What were you asking them to do? Well, there are different forms of accounting under the Lanham Act, right? So we could be accounting for their profits, and that is essentially what has gone on here, right? Whatever their profits were, there is an accounting on it. But the way in which that is disgorged, there are different remedies, and the case law recognizes this. It could be disgorged as a proxy. It could be disgorged for unjust enrichment. It could be disgorged for deterrence sake. And two of those three, courts have considered them to be equitable remedies. But if what you have is what you have here, that is directly competing products, we would say that it's much akin to the Black and Decker case that we've cited too. And in those instances, the courts will see this as a legal, not an equitable remedy. It's a substitute for pursuing a damage claim based on the harm to the plaintiff. Does that answer your question, Your Honor? I understand your position, yes. Okay. So what I'd like to do is just very briefly, because I only have a minute left, the underlying holding here was also erroneous, we believe, on the issue of both likely confusion, because again, we had identical goods and identical use of the marks, and the court nevertheless found fair use of this hard candy designation as a shade name, but there was no evidence to support fair use, because in order to have fair use, you have to look at consumer perception. The court never looked at that issue at all. There's nothing in the record about consumer perception. It was all about whether or not the explanation was credible that the defendant offered, namely that this hard candy was supposed to describe the sheen or the shade of the makeup at issue. I see that I'm out of time. No, go. You go right ahead. Okay. So the next issue is on the likelihood of confusion, and there again, there's the seven factors in the Eleventh Circuit. Four of them, our client prevailed on at summary judgment, so we were found to have a strong mark, then the goods were proximate, the advertising was proximate, and then when you get to the three that were decided against the client, it was a lack of evidence of actual confusion, but the key on that is the court relied on it and said that it was very important evidence that we had failed to come forward with evidence. Tell me why the district court clearly erred in her findings as to the ones that cut against you. Specifically, where is the clear error in the district court's determination and weighing of the intent and actual confusion factors? Not enough for me to say if I were the trial judge, I might have agreed with you. Absolutely. But you've got to show she went beyond the goalposts. She was really wrong. These facts don't come close to establishing intent or actual confusion. Yes, I think there was clear legal error here, and I'll point you to two very clear legal errors. If a plaintiff cannot prove actual confusion, the test becomes neutral, but the judge said here, quote, I must give substantial weight to the fact a plaintiff could not prove actual confusion. That's at the transcript of 2319 to 2322. That in itself is clear reversible legal error. Then on intent, that's another factor. Tell us why that's clear reversible error. Pardon me? You said that's clear reversible error. Why? Oh, I'm sorry. Because what I was saying earlier is the failure to come forward as a plaintiff, the failure to come forward with actual confusion is recognized in every circuit. That failure is only rendered neutral, particularly in the circumstances where you only have eight months of sales. This is like a flash sale. The only time that I've ever seen a court say that lack of actual confusion is a factor to be counted against a plaintiff is if you have long-term years and years of coexistence in the marketplace without confusion. That in some circumstances, the court will weigh the factor, but here after eight months, that's clear. In my view, that's clear reversible legal error. She much overvalued the lack of evidence. So do you think that she was not even permitted to consider that factor, or do you think that she overweighed that factor? No, it's clearly one of the seven factors. She must consider it. But once she has ruled that there is a lack of it— Not only must she consider it, it is among the most important of the factors to be considered. Isn't that right? That is a very tricky point, Your Honor. It is absolutely the most important evidence if a plaintiff can deduce it. The lack of the evidence, however, is never given any weight unless, like I said, it's a much longer term. Let me be clear. You're saying never given any weight. That's different than she overweighed it. Are you saying that she wasn't allowed to consider that at all or that she weighed it too heavily? She couldn't consider it to our detriment, Your Honor. That means she couldn't consider it at all. No, because she has to consider it. As you said, Your Honor, if she has to inquire— I don't know what it means then to say she couldn't consider it to our detriment. Because she has to consider it. She has to inquire about whether there is actual confusion. Once the conclusion is that there is no actual confusion, she is not allowed to weigh that against us. If she had found actual confusion, she would be allowed to weigh that in our favor. That's the clarity of the case law on it. It's only to be weighed in favor of a plaintiff. Do you have a case that says it is only to be weighed in favor of a plaintiff or is that just what you draw from the cases? I don't know that I have that specific case. I can't find one, certainly not in our law. And if you can find one for me or a statement, I'd be much appreciative. Oh, absolutely. We can submit a letter brief on that. No, no, no. Is there any case you can cite me to that stands for the proposition you've just asserted, that it can't be used against you? That it cannot be asserted against a plaintiff? It cannot be used against you. I will have to look, Your Honor. I don't know off the top of my head one. But that is clearly the weight of the case law. When you're reading that language that says it's one of the most important factors, that is true if you deduce evidence of actual confusion, but only in that instance. I'm cognizant of my time. We're giving you your full rebuttal. You're on our time, not yours. Okay, thank you, Your Honor. And we'll give you your five minutes for rebuttal. Thank you much. Okay, thank you. Good morning. Travis Wimberly for Anastasia Beverly Hills. The district court committed no error. We had a full trial. District court heard all of the evidence from both sides, and she weighed that evidence completely within her broad discretion as the fact finder. What's happening now is the appellant wants a do-over, either literally by trying the jury, even though they don't have a right to a jury, or by asking you to essentially retry the case on appeal by just substituting your judgment for the fact finder's. Either way, it's a second bite at the apple. Well, he's saying more than that. He's saying that the district court committed errors of law insofar as she considered the facts presented. And among the errors of law he cites is an error about how she looked at this question of actual confusion. He says the record was neutral, there was no evidence one way or the other, and therefore she could not count that against his client. He does say that, Your Honor. And he says that's an issue of law, and that's a fatal mistake in the analysis, at least on the prong of actual confusion. That's his claim. Correct. He says that. He does concede that this is clearly a review. I don't think he's seeking de novo review on that point. But to the substance of your question, and Judge Grant, yours as well, that is not the law. This court weighs actual confusion, lack of actual confusion, in the defendant's favor all the time. The FIU case from two years ago, lack of actual confusion weighed in the defendant's favor. A more recent case than that, which is not in our brief, but I'll mention it, Superior Consulting v. Shackley at 710 Federal Appendix 850. Not only did this, this was affirming the denial of a preliminary injunction. Not only did this court give weight to the lack of actual confusion in the defendant's favor, it actually gave that factor the greatest weight at the end of the balance, when it's balancing all the factors. But that case has no presidential value since it was an unpublished opinion. I believe the local rule says it's at least persuasive, can be persuasive. It may be persuasive, but it has no precedential value is all I'm saying. So as far as another published case from this court, Yellowfin Yachts v. Barker Boatworks. This case came out as we were filing our brief, 898 F. 3rd 1279. Again, the court talked about the lack of actual confusion. It was about a two-year period and weighed that in the defendant's favor. And you can find plenty of other cases from this court and other courts doing that. If you're interested in some cases- Is there any case law out there suggesting the opposite, the obverse proposition that is that you can't consider it if it's, if the record is blank? I'm not aware of any, I'm not aware of any particular case to that, no, your honor. You will hear sometimes plaintiffs argue that, and I think it's wrong under the law, because cases do, courts do it all the time. I'll also provide to the court, he mentioned the time period. A case involving Walt Disney, 736 F. 2nd 689. The product was out for eight months. The Southern District of New York gave that a lot of weight that there was no actual confusion, even though it was only eight months. So there's plenty of precedent for doing it. There's even precedent for doing it on a time period comparable to this one. Would the court prefer me to continue on the merits issues, or would you like to- Take it any way you want. Yes, your honor. Then the jury demand first. So we lay out in our brief, there's a lot of different ways you can affirm on this issue, and I think it really just depends on how narrow or how broad you want your opinion to be and whether you want to reach this unnecessary Seventh Amendment question. The easiest way to affirm on the jury demand is just to look at the record. They have done a complete 180 on the issue of damages between the trial court and now. When we were in the trial court, they emphasized at every possible turn that this case was not about damages or harm to them. For one, Judge Marcus, as you alluded to, the stipulation, where they waived their entire damages claim. And it's not just that they waived their entire damages claim, and you listed some of the theories that would be subsumed in that. There's also others, things like corrective advertising, that's a damages theory that they would have waived there. But it's not just that they waived the claim, it's the context in which they waived it. As counsel said, they waived it to avoid responding to our summary judgment motion on damages. They didn't think they were waiving it. They didn't think they were waiving it, Your Honor? No. They still said they wanted a jury trial. They said, given what they were asking for, that is to say, disgorgement, they believed that to be a legal remedy, not an equitable one. I'm sorry, when I said they waived it, I'm referring to the damages claim, which they explicitly waived. They waived actual damages. There's no question about that. Correct. But they didn't waive the theory that they were entitled to a jury on disgorgement. They claim that in this context, that was legal, not equitable, and therefore they were entitled to a jury. They do claim that, yes. So where's the waiver? Well, they say the most narrow way we could dispose of this and avoid answering whether the Seventh Amendment applies or not here is to simply say they didn't preserve that issue. Well, that's right, Your Honor, because the stipulation- That's why I'm asking, what is it that they did say that leads you to the conclusion they didn't preserve it other than entering the stipulation? So it's everything they did for the rest of the case after the stipulation. They spent the rest of the case repeatedly and affirmatively confirming to the district court that they were not arguing harm, which is what they're telling you they're arguing now. They filed a motion in Lemonet in which they said damages are irrelevant. Well, you know, it's all how you phrase it. What they say is we want to use the proxy. The proxy is disgorgement, and we think we're entitled to a jury on that. That's what they're saying. Let me refer you to two other things that disprove that then, two other things in the record. I'm just talking about whether you can dodge the question on the theory that they didn't come close enough to raising the argument in the district court. I think you absolutely can, Your Honor. I think you can absolutely, to use your words, dodge the question. Let me point you to two other things in the record that would support that. The proposed findings of fact and conclusions of law they filed. This is in your supplemental appendix. It's document 112. And the key paragraph is paragraph 80. This is where they told the district court why they should get disgorgement of our profits. It's a two-sentence paragraph. And the first sentence says, it is well settled that a plaintiff need not demonstrate actual damage to get profits. So there they are emphasizing again, it's not about harm. Then the second sentence, and this is maybe even more important. The second sentence of that paragraph is where they gave the district court their three grounds for getting our profits. The three grounds they gave were willful infringement, unjust enrichment, and deterrence. That's it. Nothing about damages, nothing about the theory you just referred to, Judge Marcus. They gave her three grounds in the proposed findings they filed two months before trial. Let me come at the question slightly differently. We've said that, and our precedent's clear, that a new claim or issue may not be raised on appeal. However, a new argument relating to a preserved claim may be reviewed. Does that help us any? I don't think it does, Your Honor. And there's two reasons for that. Well, I should say, does that help us? It doesn't help them. Does it help the court in resolving the question is what I meant. OK. Sorry then, I misunderstood. No, I mean, yes, you can use that as another, I think it's an independent basis to not reach the issue, because they did not raise this argument below. What they briefed to the district court is fundamentally inconsistent with what they're arguing to you. They told the district court that disgorgement is a legal remedy, always, not sometimes, not it depends. They said is. That's in their brief to the district court. And they said it is a legal remedy because of the text and structure of the Lanham Act. That's a direct quote from their district court brief. What they're telling you now, of course, is it depends. But based on what they said below, it can't depend. If disgorgement is a legal remedy under the text and structure of the Lanham Act, which it's not, by the way, but that's what they argued, then it can't depend. So they're inconsistent legal theories. And because of that, as you know, they stay completely away from their district court brief, and they focus on the hearing. And they made these few passing remarks at the hearing to this theory. But please keep in mind, the district court came into that hearing having read their brief. She actually said at the hearing, I've read your brief several times. I want to talk about the jury demand. No, I understand it. Why don't you go, I understand your argument about preserving the issue. Why don't you go to the square question about whether disgorgement of profits from the alleged misconduct amounts to an equitable remedy or a legal one. Yes, Your Honor, the legal question, which again, we don't think you need to reach. But moving on to that question, if you do reach it, we still win. No circuit has ever adopted their position. Barely any district courts have adopted their position. And in contrast, many circuits have said, disgorgement is equitable. So they won't say it, but they're asking you to create a circuit split on this issue. And that's, I think, a very tough sell to begin with, just in general, but they're not even giving you a good reason to do that. This minority legal position they offer is based on a misreading of the Supreme Court's Dairy Queen case. And it's not just me saying it's a misreading. What I think is not all that important. This court has said it's a misreading, and that was in Phillips v. Capless. And we briefed Phillips, we briefed it below, and they have never substantively responded to it. It is the governing authority from this court on how to read the Dairy Queen decision. There's another problem on the legal side of their argument. And Judge Marcus, I believe you alluded to this in counsel's argument. What their argument does is it collapses the distinction between what are supposed to be two separate remedies. Damages and disgorgement are not the same thing. They're listed separately in the Lanham Act. They develop separately historically in two different English court systems. Of course, damages in the courts of law and disgorgement in the courts of equity. Their position basically treats them as the same, because if they're right, every plaintiff can just say, you know what, I waive my whole damages claim, but your profits are my damages, and then there's no distinction. The two circuit cases you're referring to arise in the Sixth and the Ninth Circuits, Rory and 56 Hope. Basically, they assert that they don't provide much rationale. Why should we follow it? Why are those conclusions persuasive in your view? Well, I think what I just said is one of the reasons they're persuasive, because any other conclusion, or at least the position they offer, collapses the distinction between the remedies. Disgorgement and damages are not the same, and the decisions from the Sixth and the Ninth respect that. Because in those cases, the plaintiff did not have a damages claim, and the court didn't sort of treat disgorgement as a damages claim. It recognized that there are two different remedies that have developed separately historically. Also, I just think the sheer fact that it's not just those two cases. I mean, those are the two that have addressed the issue in this exact context. But there is overwhelming circuit authority in- Is accounting in a disgorgement in the Lanham Act context always equitable? Or are there circumstances when it would be legal? It is always equitable. The circumstances that they're alluding to is when the plaintiff- Interesting, there's an observation coming out of the Seventh Circuit in Medtronics. Where the court says, accountants were deemed inherently equitable in cases between partners and others in particular relationships. But in most other cases, an accounting was equitable only if, quote, it was too complex for a jury to understand. I'm not sure- I'm not sure that that's right, and I'm not sure that it comes close to answering our question. But I do throw it out to you. Yeah, I don't think that's a, I don't know that that's a correct statement of the Supreme Court law on this issue. I also don't think it's a correct statement of what this court has alluded to in its decisions. The Supreme Court has said many times- Well, we've never answered this question squarely. No, no, no, I mean in dicta and in cases that have been addressing these issues, but in other contexts. The Supreme Court has. Problems up in securities cases and stuff like that, but I'm talking about in a Lanham Act case. In the Lanham Act case, this court said in the Levi Strauss case that disgorgement is equitable. Right. It was not a jury demand case, so I admit it's not the same posture, but this court said that. And then you go to all the other circuits, they've all said it too. And then you go to the Supreme Court, and they've said it too. Look, it's an older case, and it's pre-Lanham Act, but I don't know that that matters. Look at the Hamilton Brown Shoe case from the Supreme Court. They said disgorgement is an equitable remedy. It was very clear. Your Honor, I want to make one other point going back to the record, because I think this is absolutely crucial. They're trial objections. Every time we try to examine a witness at trial about their lack of harm, they objected and said that's irrelevant. We're not arguing harm. This happened over and over at the trial. And we cite several examples in our brief. They're on page 22. The most telling one, and the one I want to really emphasize, came on the third day of trial. It's in document 137, page 12. This is when our financial expert was testifying. And he said he'd seen, quote, no evidence of financial or economic harm to the plaintiff. And as soon as he said that, their trial counsel stood up, and I'll quote him directly. He said, objection relevance, harm to the plaintiff is not an element of this case. I don't know how you get any more clear than that, your honors. Not only did they repeatedly tell the district court this case isn't about harm, they actually used that as a sword against us to try and prevent us from building even more of a record about their lack of harm. But now they're telling you, of course, we were harmed. They can't do that. They can't have it both ways. And then there's also just the basic evidentiary problem for them on this issue. There's no evidence they were harmed in the record at all. There's no evidence my client's conduct caused them any harm. There's no evidence that my client's profits on this product, about $3.9 million, could in any way realistically serve as a proxy for damages. And you contrast all of that I just told you to their case, Black & Decker, from Illinois. It basically constitutes their entire argument on this issue, or at least most of it. Black & Decker, it's not the law, first of all, but it wouldn't help them even if it were the law. It's completely different. First of all, I don't wanna get too in the weeds with Black & Decker, but I will mention the plaintiff there had a damages claim all the way through trial. The court in Black & Decker mentioned that in the jury demand opinion. And you have to go look at the docket for some of this stuff, but I'll give you the docket numbers. The defendant there moved for summary judgment on damages like we did. And what the plaintiff there did was the opposite. Instead of waiving the claim, they came forward with damages evidence, opposed the summary judgment motion, and won. So they kept their damages claim in the case in Black & Decker. That's docket entry 93 in Black & Decker if you'd like to go look at that. Complete opposite of what this appellant did. And also, because the plaintiff there successfully opposed that summary judgment motion, the pretrial order had a damages claim. That's docket entry 196 in Black & Decker. So again, totally different from this case. And those are just the procedural differences. There's also the evidentiary difference. Your Honor, I see that I'm out of time, so I don't wanna run over the clock, so. Thanks very much. Thank you. Thank you, Your Honors. Returning to the issue of reverse confusion, and then I'll address the jury. We did look at our brief at page 51 and 52. There are a number of cases cited there, including one out of the Seventh Circuit that says, quote, the most that the absence of evidence of actual confusion can be said to indicate is that the record does not contain any evidence of actual confusion known to the parties. So I think whether the court weighed it or weighed it too heavily, it's clear from the quote that the court used that this was, it played too heavy a role in her decision. And in terms of the jury decision, they've argued that we waived it, but I read you this quote from the district court hearing on it. This is our counsel. The law recognizes that in these situations, it is very hard, if not impossible, to establish actual losses by the plaintiff. So you look to the defendant's profits with a presumption that those would have been sales the plaintiff would have made otherwise. And those profits, in essence, become a substitute measure for the plaintiff's damages. That is why, in my view, it is a hybrid situation. So at the hearing, it's very clear to me that this was put squarely before the district court. There was no waiver in the stipulation. There was no waiver at the hearing. And as far as what went on in terms of conduct at the trial, I think at the trial, it becomes irrelevant, particularly in light of the fact that when you're using this type of proxy theory, like the Daisy Group case of the Newport News, there, there was no evidence that the defendant had lost sales. I'm sorry, that the plaintiff had lost sales. Do you have a requirement to show any harm at all? I understand that you're saying it's very hard to get specific on the damages, but did you need to show any harm at all to preserve this argument? What I think we had to show, if you read the cases and how these get decided, for example, in that First Circuit case where they said they thought that this is the best interpretation of the Seventh Circuit, but they elected not to use it because it involved reverse confusion. So what you needed to show was what we did show on summary judgment. That is, that you've got products in the marketplace that are competing, like in the Black and Decker case. They don't have to be on the same shelves. If they're competing and they're in direct competition with each other, then you have a theory for the proxy theory of taking away the profits as damage. And that's how these cases read, Your Honor. So do you have to prove actual harm? No, because then it would be circular. It's so difficult. So the presumption is in that case, a jury or a fact finder would weigh, did the client lose sales as a result of the fact that the infringement occurred in the same trade channels and in the same advertising channels? Let's go back to the Seventh Amendment jury right issue. Your colleague cited to a very interesting old Supreme Court case, decided in 1915, Hamilton Shoe. And I want to reference it to you to seek your thoughts about it. We're talking about trademark case there. You're familiar with the case? Yes, Your Honor. And it's very interesting what the court says. It says, and I quote, the right to use a trademark is recognized as a kind of exclusive enjoyment to the extent that it has actually been exclusive, actually been used. The infringer is required in equity to account for and yield up his gains to the true owner upon a principle analogous to that which charges a trustee with the profits acquired by wrongful use of the property of the trust. Court says with great clarity that the accounting which is understood, and historically there is no question, if you go back early in time to equity, accounting is generally understood to include an accounting of his profits and a disgorgement of them, the Supreme Court says the infringer is required in equity to account for and yield up his gains to the true owner. To yield up the gains, to disgorge, that's what we're talking about there. Suggests an answer, it's before we have codification, it's an early case. But it explains the theoretical foundation behind suggesting that disgorgement and accounting are equitable in nature. They could be legal depending on the context. But in this context, the suggestion is it's more than a suggestion. The statement is it is equitable in nature. What am I to do with that? I think honestly you can ignore that case because it predates the Lanham Act. It certainly does. And what's specific. Certainly the Supreme Court tells us when we look at the Seventh Amendment to determine whether there is a right to a jury, we are required to go back in time, go back to the common law and see whether originally this kind of claim was understood to be the kind of claim that gave you a right to a jury. I think that's part of the analysis, but then you have to look to the statute. And the statute here specifically creates an easing of the burden on the plaintiff. You would concede, would you not, that Hamilton Hsu certainly says accounting and accounting are equitable in nature. That's indisputable. I believe that that is indisputable. I also think- It's irrelevant. This inquiry is however irrelevant. Irrelevant because it predated the Lanham Act. For several reasons. It predated the Lanham Act. It predated Dairy Queen, which there have been different presentations about what Dairy Queen stands for. But I would stand by the First Circuit's Visible Systems Corporation decision where they say, in our view, this proxy rationale may well present the strongest argument under the Seventh Amendment. But you don't think that in Dairy Queen, the Supreme Court was looking at a legal claim for damages arising out of a breach of contract? Your Honor, I've read that case probably 20 times. I have no doubt. And I'm sure that my view is colored by who I represent here. But I believe that the way that that case should be read is the Supreme Court ended up granting a jury to the complaining party. The reason is what we're asking. Why did they grant a jury? I understand. And my read of it is that it should be interpreted as the First Circuit has interpreted it, as several district courts have interpreted it. I am surprised that there is as much case law out there saying that Dairy Queen doesn't grant a jury right. I believe it's a legal remedy. And I would say under Dairy Queen, my reading of it is it's a legal remedy forever and always. And it's not just with- But don't they say the following, the most natural construction of the respondent's claim was for a money judgment, that is that they are entitled to recover whatever was owed them under the contract plus damages for infringement of their trademark. Right, plus damages for infringement. So that is not equitable, it's legal, right? What about the first part? That's what? What about the first part of the statement that I read to you? That they are entitled to recover whatever was owed them under the contract. That would plainly be legal in nature and would yield necessarily a jury trial, wouldn't it? That is correct, Your Honor. That's my understanding of the law, that that would clearly be. But I don't think that it was an accident that they yoked them. So it was these two theories going toward granting a jury. And what's important to me is the overall function, right? The denial of the jury, you're supposed to read every remedy against that. It's a fundamental right under the Seventh Amendment. What harm is there? I think Your Honor raised it. A jury's competent to decide the disgorgement. I have no doubt about that. Absolutely. And I think the First Circuit really is the one that spoke on this. And those cases in the Ninth and the Sixth Circuit that you alluded to, neither one of those rejected this proxy theory. The Sixth Circuit, it's a very strange case because it came out of the district court and the remedies were equitable there. They were limited by the bankruptcy court's lifting of the stay. And in the Ninth Circuit, again, the theory was just not in front of them. And I don't think it should have been because as we were talking about- your remarks to a conclusion, we'd be much appreciative. Thank you very much. No, no, I didn't mean to cut you off in the middle of a sentence, but if you- No, and I appreciate it, Your Honor. But we really do, we didn't have much of a chance to talk about this today, but this is the identical, it's a use of a strong mark, a mark that was found in summary judgment to be strong on identical goods, in identical trade channels. And a jury should have heard this and it should have come out the other way, Your Honor. There were legal errors on the lack of a- granting of a jury, on overweighing the lack of evidence of actual confusion, overweighing intent. And their fair use just got very scrambled, Your Honor. And we really do believe this should be either reversed completely or remanded for a jury trial. Thanks very much. Thank you both. Thank you very much. This court will be in-